UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

POSITANO PLACE AT NAPLES I
CONDOMINIUM ASSOCIATION,
INC., a Florida not-for-profit
Corporation,

      Plaintiff,

v.                                                  Case No.:  2:21-cv-178-SPC-MRM

EMPIRE INDEMNITY
INSURANCE COMPANY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Pending before the Court is Plaintiff's Motion to Compel Appraisal and Stay

Proceedings Pending Completion of Appraisal and Incorporated Memorandum of

Law, filed on July 23, 2021.  (Doc. 41).  Defendant filed Defendant's Response in

Opposition to Plaintiff's Motion to Compel Appraisal and for Stay on September 3,

2021.  (Doc. 47).  The motion is ripe for consideration.[1]

---

[1]  Substantially similar motions and memoranda were filed in this case and three
related cases.  *See Positano Place at Naples I Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*,
No. 2:21-cv-178-SPC-MRM, Docs. 41, 47 (M.D. Fla. Sept. 3, 2021); *Positano Place at
Naples II Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-cv-181-SPC-MRM,
Docs. 44, 50 (M.D. Fla. Sept. 3, 2021); *Positano Place at Naples III Condo. Ass'n, Inc. v.
Empire Indem. Ins. Co.*, No. 2:21-cv-183-SPC-MRM, Docs. 41, 47 (M.D. Fla. Sept. 3,
2021); *Positano Place at Naples IV Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:21-
cv-186-SPC-MRM, Docs. 44, 50 (M.D. Fla. Sept. 3, 2021).

For the reasons below, the Undersigned recommends that Plaintiff's Motion to Compel Appraisal and Stay Proceedings Pending Completion of Appraisal and Incorporated Memorandum of Law (Doc. 41) be **GRANTED**.

## I.    BACKGROUND

This matter arises from an insurance dispute between Plaintiff, a condominium association owning five buildings in Naples, Florida, and its commercial property insurer.  (*See* Docs. 1; 47-1 at 2-3).[2]  Defendant issued a commercial property insurance policy to Plaintiff bearing policy number ECL9490628-02 for the period January 26, 2017 to December 31, 2017, (the "Policy").  (Doc. 41 at 1; *see also* Doc. 41-1 at 8).

The relevant provisions of the Policy – cited by the parties – read:

> **E.  Loss Conditions**
>
> The following conditions apply in addition to the Common Policy Conditions and the Commercial Property Conditions.
>
> . . .
>
> **2.  Appraisal**
>
> If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event, each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they

---

[2]  Pinpoint page citations for documents refer to CM/ECF pagination.

will submit their differences to the umpire.   A decision agreed to by any two will be binding.   Each party will:

    **a.** Pay its chosen appraiser; and

    **b.** Bear the other expenses of the appraisal and umpire equally.

If there is an appraisal, we will still retain our right to deny the claim.

**3. Duties In The Event Of Loss Or Damage**

    **a.** You must see that the following are done in the event of loss or damage to Covered Property:

        **(1)** Notify the police if a law may have been broken.

        **(2)** Give us prompt notice of the loss or damage. Include a description of the property involved.

        **(3)** As soon as possible, give us a description of how, when and where the loss or damage occurred.

        **(4)** Take all reasonable steps to protect the Covered Property from further damage, and keep a record of your expenses necessary to protect the Covered Property, for consideration in the settlement of the claim.   This will not increase the Limit of Insurance.   However, we will not pay for any subsequent loss or damage resulting from a cause of loss that is not a Covered Cause of Loss.   Also, if feasible, set the damaged property aside and in the best possible order for examination.

        **(5)** At our request, give us complete inventories of the damaged and undamaged property.   Include quantities, costs, values and amount of loss claimed.

**(6)** As often as may be reasonably required, permit us to inspect the property proving the loss or damage and examine your books and records.

Also permit us to take samples of damaged and undamaged property for inspection, testing and analysis, and permit us to make copies from your books and records.

**(7)** Send us a signed, sworn proof of loss containing the information we request to investigate the claim.  You must do this within 60 days after our request.  We will supply you with the necessary forms.

**(8)** Cooperate with us in the investigation or settlement of the claim.

. . .

## G.  Optional Coverages

. . .

## 3.  Replacement Cost

**a.** Replacement Cost (without deduction for depreciation) replaces Actual Cash Value in the Loss Condition, Valuation, of this Coverage Form

. . .

**d.** We will not pay on a replacement cost basis for any loss or damage:

**(1)** Until the lost or damaged property is actually repaired or replaced; and

**(2)** Unless the repairs or replacement are made as soon as reasonably possible after the loss or damage.

(Doc. 41-1 at 33-34, 37-38; *see also* Docs. 41 at 3-4; 47-1 at 28-30).

On September 10, 2017, Hurricane Irma damaged a portion of Plaintiff's commercial property. (Doc. 41 at 2). On March 16, 2018, Plaintiff submitted a claim to Defendant for the damage. (Doc. 47-1 at 3, 9).[3]

On May 21, 2018, Defendant sent a letter to Plaintiff's claim consultant, Keys Claims Consultants, LLC, ("Keys Claims"), acknowledging receipt of Plaintiff's Hurricane Irma claim and asserting that "the estimated wind damages do not exceed the applicable deductibles." (*See id.* at 9-13). Then, on February 6, 2019, Defendant sent a second letter to Keys Claims requesting that Plaintiff submit an attached Proof of Loss, ("POL"), within sixty days. (*See id.* at 15-19).

Plaintiff submitted a POL to Defendant on April 24, 2019. (*See id.* at 21).[4] Even so, Defendant responded through a May 21, 2019 letter and asserted that "[t]he POL is not final and complete based on the references to 'Partial'. [sic] We will consider only this partial POL as it relates to the roof. This POL cannot serve as the

---

[3] While Defendant's Declaration of Scott Klaben, (Doc. 47-1 at 1-5), and Defendant's May 21, 2018 letter, (Doc. 47-1 at 9-13) state that Plaintiff did not report the claim until March 16, 2018, Defendant's May 21, 2019 letter, (Doc. 47-1 at 21-22), states that Plaintiff submitted its claim on March 13, 2018. This inconsistency is immaterial to the current motion, but the Undersigned notes the inconsistency for the sake of clarity.

[4] While Defendant's May 21, 2019 letter, (Doc. 47-1 at 21-22), states that Plaintiff submitted the partial POL on April 24, 2019, Defendant's Declaration of Scott Klaben, (Doc. 47-1 at 1-5), states that Plaintiff submitted the partial POL on April 22, 2019. This inconsistency is immaterial to the current motion, but the Undersigned notes the inconsistency for the sake of clarity.

basis for compliance with policy terms for any other portion of the claim." (*Id.*).

Additionally, in the same letter, Defendant stated that "[o]ur investigation of your

client's claim found that two of the five buildings [covered under the Policy] did not

incur any hurricane-related damage. . . .  Therefore, we are denying coverage as a

whole for any damage claim to these buildings." (*Id.* at 22).  Moreover, Defendant

noted that it would object to Plaintiff's selection of Keys Claims or any of Keys

Claims' employees as its impartial appraiser if appraisal was invoked under the

Policy.  (*Id.*).

Subsequently, on September 10, 2019, Defendant sent a fourth letter to Keys

Claims acknowledging receipt of a September 5, 2019 letter and asserting that it

would "provide a 180-day extension to the two-year repair requirement for ordinance

and law/increased cost of construction [coverage and would] not contest a claim for

replacement cost [coverage] if . . . repairs are made within the 180-day extension."

(*See id.* at 24-25).

Soon after, Plaintiff submitted a September 27, 2019 Sworn Statement in

Proof of Loss, ("SPOL"), to Defendant asserting a total claim of $2,140,561.04 in

"[a]ctual cash value loss." (*See* Docs. 41-2; 47-1 at 27).

Then, on September 28, 2020, Defendant sent Keys Claims a fifth letter

confirming receipt of a September 9, 2020 letter, stating that Defendant made

undisputed payments totaling $39,266.96 to Plaintiff, and recognizing Plaintiff's

SPOL as asserting a total claim of $2,140,561.04.  (Doc. 47-1 at 27).  Additionally,

Defendant stated that it could not determine whether Plaintiff was attempting to

assert a supplemental claim, re-open its prior claim, or alter its prior claim. (*See id.* at 27-30).

Eventually, Plaintiff filed the instant suit, which was removed to this Court on March 5, 2021. (*See* Docs. 1; 3). Plaintiff filed the operative complaint on June 9, 2021, (Doc. 39), and the instant motion on July 23, 2021, (Doc. 41).

## II.   ARGUMENTS

In its motion, Plaintiff asserts that: (1) its property sustained covered damage as a result of Hurricane Irma; (2) it promptly notified Defendant of its damage claim; (3) it complied with all of its post-loss obligations; (4) a dispute arose over the scope and amount of Plaintiff's damages in the claim; (5) it properly requested an appraisal under the Policy; and (6) Defendant improperly refused to engage in an appraisal. (*See* Doc. 41 at 2-3, 9-10). Accordingly, Plaintiff contends that the parties should be compelled to engage in an appraisal under the Policy to determine "the total amount of loss." (*Id.* at 3, 10-11). Instead of proffering specific arguments related to the facts of this case, Plaintiff cites many cases to support the general proposition that:

> Appraisal clauses are preferred, as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits . . . [and w]hile issues concerning coverage challenges are exclusively for the courts, where an insurer admits there is a covered loss and there is a disagreement regarding the amount of the loss, the appraisers are charged with determining the loss.

(*See id.* at 4-7 (citations omitted)). Plaintiff also argues that "[t]o the extent . . . Defendant may raise any coverage defenses to this claim, these defenses can be preserved while the amount of loss is determined through appraisal." (*Id.* at 10-11).

Additionally, Plaintiff contends that the instant litigation should be stayed pending the completion of an appraisal. *(See id.* at 11). Specifically, Plaintiff argues that "[o]nce appraisal as to damages is complete, if Defendant has any defenses to bring forward, it can do so once the stay is lifted." (*Id.*).

In response, Defendant first contends that "compelling appraisal is an injunctive remedy in the form of specific performance," which cannot be required "[b]ecause [Plaintiff] fails to show entitlement to specific performance." (Doc. 47 at 2). In support, Defendant asserts that "[m]ost federal district courts in Florida" agree that requiring parties to engage in appraisal constitutes "an equitable and injunctive remedy that must be *pleaded* and *proven*, at the very least, as specific performance on the Policy." (*Id.* (emphasis in original)). Defendant also argues that neither *Johnson v. Nationwide Mut. Ins. Co.*, 828 So. 2d 1021 (Fla. 2002), nor Florida cases enforcing appraisal through Florida's Arbitration Code before *Allstate Ins. Co. v. Suarez*, 833 So. 2d 762 (Fla. 2002), provide this Court with the authority to compel appraisal. (*See* Doc. 47 at 3-4). Rather, Defendant contends that "[t]he only available source of power for federal courts to compel appraisals is that to fashion equitable remedies, whether in the form of specific performance or injunction [and because] diversity jurisdiction [applies] in this case, federal law governs whether and how this Court may procedurally enforce appraisal." (*Id.* at 4-5). Building on that conclusion, Defendant asserts that "[Plaintiff's] complaint fails to allege—and its motion lacks any evidence supporting—specific performance." (*Id.* at 7; *see also id.* at 7-10).

Second, Defendant argues that appraisal cannot be compelled before a final determination is made as to whether Defendant breached the Policy's appraisal provision. (*Id.* at 10-11).  Put differently, because Plaintiff asserts a claim for specific performance, Defendant contends that "it defies proper procedure to grant relief without *adjudicating that very count.*" (*Id.* at 11 (emphasis in original) (citing *Indian Harbor Ins. Co. v. Int'l Studio Apartments, Inc.*, No. 09-60671-CIV, 2009 WL 10668603, at *1 (S.D. Fla. Sept. 22, 2009))).

Third, Defendant contends that it "*wholly* failed to accept coverage for two of the five buildings that [Plaintiff] comprises, since they suffered *no* damages," (*id.* at 11-12 (emphasis in original) (citing Doc. 47-1 at 4)), and thus, appraisal as to those buildings would be inappropriate, (*see id.* at 11-12 (citing *Pernas v. Scottsdale Ins. Co.*, No. 1:15-cv-21506-KMM, 2016 WL 471949, at *1 (S.D. Fla. Feb. 8, 2016); *Fla. Ins. Guar. Ass'n v. B.T. of Sunrise Condo. Ass'n, Inc.*, 46 So. 3d 1039 (Fla. 4th DCA 2010))).

Fourth, if appraisal is compelled, Defendant requests that the Court impose prospective instructions on the appraisal panel to ensure that the parties receive due process protections during the appraisal.  (*See id.* at 12-17 (citations omitted)). Specifically, Defendant requests:

> (1) copy and notice of documents submitted by [Plaintiff] to the appraisal panel; (2) empowering the appraisers to seek and obtain from the parties all documentary evidence needed and with a deadline for submissions; (3) no ex parte communications between the parties and appraisal panel without copy to the other party; (4) a reasonable itemization of the award segregating the calculation of actual cash value from replacement cost, showing all deductions and depreciation; (5) a calculation of the amount of loss that

> excludes matching and includes depreciation of labor; and
> (7) the panel's consideration only of invoices, receipts, and
> documents showing money actually spent on repairs, not
> estimated amounts, in calculating replacement cost.

(*Id.* at 16-17 (citing *Auto-Owners Ins. Co. v. Summit Park Townhome Ass'n*, 129 F. Supp.

3d 1150, 1156-58 (D. Colo. 2015))).

Fifth, if appraisal is compelled, Defendant asserts that certain procedures

should apply to the appraisal panel's award.  (*See id.* at 17-18).  First, that "any award

should be broken down, stating separately the value or amount of loss," because the

case is complex and would involve an appraisal of multiple buildings.  (*See id.*

(citations omitted)).  Second, that any award should not include the calculation of

"actual cash value, since [Plaintiff] has never presented such a claim and no dispute

exists regarding it."  (*Id.* at 18).  To that end, Defendant asserts that the appraisal

panel should only calculate the award "through receipts and invoices of money

actually spent, not estimates."  (*Id.* (emphasis omitted)).

Finally, Defendant argues that "[e]ven assuming [Plaintiff] has shown

entitlement to appraisal, discovery should proceed unabated on a dual track [because

t]o halt discovery now would interfere with [Defendant's] ability to fully investigate

any potential inflation of prices or estimates."  (*Id.* at 18-19).

Plaintiff has not responded to Defendant's arguments.

III.   **LEGAL STANDARD**

In a diversity case, the substantive law of the forum state – in this case Florida – applies. *Winn-Dixie Stores, Inc. v. Dolgencorp, LLC*, 746 F.3d 1008, 1020 (11th Cir. 2014). "In Florida, appraisal provisions contained within insurance policies are generally treated the same as arbitration provisions." *Wright Way Emergency Water Removal, LLC v. Mt. Hawley Ins. Co.*, No. 8:16-cv-1163-T-17MAP, 2016 WL 9526569, at *2 (M.D. Fla. July 29, 2016). Thus, "motions to compel appraisal should be granted whenever the parties have agreed to the provision." *Id.* (citing *Preferred Mut. Ins. Co. v. Martinez*, 643 So. 2d 1101, 1102 (Fla. 3d DCA 1994)). Additionally, "enforcement of appraisal provisions [is] preferred over lawsuits 'as they provide a mechanism for prompt resolution of claims and discourage the filing of needless lawsuits.'" *Id.* (quoting *First Protective Ins. Co. v. Hess*, 81 So. 3d 482, 485 (Fla. 1st DCA 2011)).

Furthermore, "[u]nder Florida law, a dispute regarding a policy's coverage for a loss is exclusively a judicial question." *Gonzalez v. Am. Sec. Ins. Co.*, No. 8:15-cv-1515-36EAJ, 2015 WL 12852303, at *4 (M.D. Fla. Nov. 10, 2015) (citations omitted). "However, when an insurer acknowledges that there is a covered loss, any dispute regarding the amount of such loss is appropriate for appraisal." *Evanston Ins. Co. v. Etcetera, Etc Inc.*, No. 2:18-cv-103-FtM-99MRM, 2018 WL 3526672, at *3 (M.D. Fla. July 23, 2018) (citations omitted).

## IV.    ANALYSIS

The Undersigned finds that appraisal should be compelled in this case. Plaintiff states that it sustained a covered loss and complied with all of its post-loss obligations.  (*See* Doc. 41 at 2, 9).  Additionally, Plaintiff alleges that "[a] dispute has arisen over the scope and amount of Plaintiff's damages."  (*Id.*).  Notably, Defendant does not contest these specific assertions.  (*See* Doc. 47).  Accordingly, because there is a dispute over the amount of a covered loss and the Policy contains an appraisal provision, the Undersigned finds that requiring the parties to engage in an appraisal is appropriate in this case.  *See Johnson*, 828 So. 2d at 1025; *Evanston*, 2018 WL 3526672, at *3.

Moreover, the Undersigned is not persuaded by Defendant's arguments as to why appraisal should not be ordered.  To begin, Defendant's arguments request sweeping changes to current Florida law, but are mostly supported by citations to authority outside of Florida and the Eleventh Circuit.  (*See* Doc. 47).  While the cited cases may hold some persuasive value, they should not be used to overturn extensive Florida precedent.

### A.    Whether Appraisal Can Only Be Compelled as a Form of Specific Performance.

As to Defendant's first specific contention, that "compelling appraisal is an injunctive remedy in the form of specific performance," which cannot be required "[b]ecause [Plaintiff] fails to show entitlement to specific performance," (*id.* at 2), the Undersigned is not persuaded for two reasons.

First, assuming *arguendo* that Plaintiff was required to plead and prove specific performance in this case, (*see id.* at 7-10), the Undersigned notes that the Court has already ruled on the sufficiency of Plaintiff's claim for specific performance, (*see* Doc. 23 at 3-5 ("[P]arties can enforce appraisal provisions by bringing specific performance claims [and Plaintiff] alleged each element [of specific performance].") (citations omitted)).  Consistent with the Court's prior Order, the Undersigned finds that Plaintiff sufficiently asserted its right to appraisal in its claim for specific performance.  (*See id.*); *see also People's Tr. Ins. Co. v. Vidal*, 305 So. 3d 710, 715 (Fla. 3d DCA 2020) (finding that an insurer did not waive its right to seek to compel appraisal when it when it brought a claim for specific performance).

Second, the Undersigned finds that Plaintiff is not required to plead and prove the elements of specific performance for the Court to compel appraisal.

"In Florida, appraisal provisions contained within insurance policies are generally treated the same as arbitration provisions."  *Wright Way Emergency Water Removal, LLC*, 2016 WL 9526569, at *2 (citations omitted); *see also Webb Roofing & Constr., LLC v. FedNat Ins. Co.*, 320 So. 3d 803, 806 (Fla. 2d DCA 2021) ("While appraisal and arbitration differ in some important respects, Florida case law recognizes that appraisal clauses are often treated similarly to arbitration clauses.").  Thus, "motions to compel appraisal should be granted whenever the parties have agreed to the provision."  *Wright Way Emergency Water Removal, LLC*, 2016 WL 9526569, at *2 (citations omitted).  Additionally, "enforcement of appraisal provisions [is] preferred over lawsuits 'as they provide a mechanism for prompt

13

resolution of claims and discourage the filing of needless lawsuits.'" *Id.* (citing *Hess*, 81 So. 3d at 485).

Thus, Florida case law suggests that methods of alternative dispute resolution, such as appraisal, should be employed when possible.  Moreover, the Court already addressed this specific issue and noted that "parties can seek appraisal through breach of contract and declaratory judgment actions."  (Doc. 23 at 3 (citing *Castillo at Tiburon Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-468-FtM-38MRM, 2020 WL 7587181, at *1-2 (M.D. Fla. Dec. 22, 2020); *Creekside Crossing Condo. Ass'n v. Empire Indem. Ins.*, No. 2:20-cv-00136-JLB-MRM, 2020 WL 5973177, at *2-4 (M.D. Fla. Sept. 2, 2020))).  Here, because Plaintiff's operative complaint asserts claims for both breach of contract and declaratory judgment, (*see* Doc. 39 at 7-9), the Undersigned finds that appraisal can be compelled, (*see* Doc. 23 at 3).  Additionally, the Undersigned notes that while each case cited by Defendant finds that a party *may* bring a motion to compel appraisal after asserting a claim for specific performance, none stands for Defendant's proposition that a party *must* assert a claim for specific performance to compel appraisal.  (*See* Doc. 47 at 2-7 (citing *Residences at Eur. Vill. Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 3:19-cv-1490-J-20JRK, 2020 WL 5948314, at *5 (M.D. Fla. July 17, 2020); *Parkway Baptist Church, Inc. v. Guideone Elite Ins. Co.*, No. 10-23965-CV, 2011 WL 13099891, at *3 (S.D. Fla. Sept. 21, 2011); *La Gorge Palace Condo Ass'n, Inc. v. QBE Ins. Corp.*, 733 F. Supp. 2d 1332 (S.D. Fla. 2010); *People's Tr. Ins. Co. v. Valentin*, 305 So. 3d 324, 327 (Fla. 3d DCA 2020); *People's Tr.*

*Ins. Co., v. Nowroozpour*, 277 So. 3d 135, 136 (Fla. 4th DCA 2019))).  What's more, none of the cases Defendant cites that apply Florida law directly address a motion to compel appraisal.  (*See id.* (citations omitted)).

To the extent that Defendant argues the Court does not possess the power to compel appraisal outside of granting specific performance, (*see* Doc. 47 at 3-4 (citations omitted)), the Undersigned is not persuaded.  Defendant summarily concludes that *Allstate Ins. Co. v. Suarez*, 833 So. 2d 762 (Fla. 2002) abrogated the Court's authority to compel appraisals by overruling *U.S. Fid. & Guar. Co. v. Romay*, 744 So. 2d 467, 469 (Fla. 3d DCA 1999).  (*See* Doc. 47 at 3-4).  Defendant supports its contention that *Suarez* divested the Court of the authority to compel appraisals by citing to *Nationwide Mutual Fire Insurance Co. v. Schweitzer*, 872 So. 2d 278, 279 (Fla. 4th DCA 2004), and summarily concluding that *Schweitzer* "recogniz[ed the] abrogation of [*Romay*]."  (*See* Doc. 47 at 4).  However, upon a review of the relevant cases, the Undersigned finds that Defendant reads conclusions into both *Schweitzer* and *Suarez* that were not made.

Defendant's arguments rely on *Romay*, *Suarez*, and *Schweitzer*.  In *Romay*, Florida's Third District Court of Appeal noted that "[a]ppraisal provisions in insurance policies such as the one in the instant case have generally been treated as arbitration provisions."  744 So. 2d at 469 (finding, *inter alia*, that appraisal can be compelled through Fla. Stat. § 682.03, Florida's Arbitration Code).  Thereafter, in *Suarez*, the Supreme Court of Florida held that "[appraisal] proceedings should be

conducted in accord with [the insurance contract's] provisions, rather than by the wholly different proceedings contemplated by an agreement to arbitrate." 833 So. 2d at 766 ("[A]n informal appraisal proceeding, *not* a formal arbitration hearing . . . was intended and agreed upon by the parties."). Finally, in *Schweitzer*, Florida's Fourth District Court of Appeal found that "[i]t follows from *Suarez* that an order granting or denying an appraisal is not appealable as an order involving entitlement to arbitration." *Schweitzer*, 872 So. 2d at 279 (finding that *Romay* was "overruled by *Suarez* on the issue of appealability of an order involving entitlement to an appraisal").

Applying these cases here, the Undersigned finds that *Suarez* did not, as Defendant contends, overturn Florida's prior policy and precedent that "appraisal provisions contained within insurance policies are generally treated the same as arbitration provisions . . . [and, t]herefore, motions to compel appraisal should be granted whenever the parties have agreed to the provision," *Wright Way Emergency Water Removal, LLC*, 2016 WL 9526569, at *2 (citing *Fla. Ins. Guar. Ass'n, Inc. v. Castilla*, 18 So. 3d 703, 704 (Fla. 4th DCA 2009); *Romay*, 744 So. 2d at 469; *Martinez*, 643 So. 2d at 1102). Additionally, although *Schweitzer* found that *Suarez* overruled *Romay* on the specific issue of appealability of an order involving entitlement to an appraisal, it did not refer to or consider the *Suarez* decision's effect on the Court's authority to compel appraisal pursuant to Fla. Stat. § 682.03. *See Schweitzer*, 872 So. 2d at 279. Rather, both *Schweitzer* and *Suarez* are examples of specific exceptions to

the general Florida law and policy that "[a]ppraisal provisions in insurance policies [are] generally . . . treated as arbitration provisions." *Romay*, 744 So. 2d at 469, *rev'd in part on other grounds*, *Suarez*, 833 So. 2d at 765.

The Court arrived at the same conclusion on an analogous issue in *Three Palms Pointe, Inc. v. State Farm Fire & Cas. Co.*, 250 F. Supp. 2d 1357, 1361 (M.D. Fla. 2003), *aff'd*, 362 F.3d 1317 (11th Cir. 2004). The Court in *Three Palms Pointe, Inc.* noted that, while the Florida Supreme Court in *Suarez* held that the formal procedures of Florida's Arbitration Code should not be applied to the actual appraisal process, Florida's Arbitration Code could still be applied to determine that the appraisal award was confirmable. *Id.* at 1361-62 (citing *Suarez*, 833 So. 2d at 765-66) ("While acknowledging some differences between appraisal and arbitration provisions, Florida courts have generally treated appraisal clauses as 'narrowly restricted' arbitration provisions . . . [and] have repeatedly utilized Florida Statutes § 682.03 as a basis to compel appraisals." (citations omitted)); *see also Mont Claire at Pelican Marsh Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-601-SPC-MRM, 2021 WL 3476406, at *3 (M.D. Fla. May 24, 2021), *report and recommendation adopted*, 2021 WL 3205694 (M.D. Fla. July 29, 2021) ("*Suarez* did not modify existing Florida law on confirmation of appraisal awards.").

In sum, the Undersigned finds that this Court maintains the ability to compel appraisal outside of granting specific performance based on Florida law and policy. *See, e.g.*, *Baldwin Realty Grp. Inc. v. Scottsdale Ins. Co.*, No. 6:18-cv-785-Orl-41DCI,

2018 WL 4381206, at *7 (M.D. Fla. Sept. 6, 2018), *report and recommendation adopted*, 2018 WL 5221228 (M.D. Fla. Oct. 22, 2018) (recommending that the parties be compelled to participate in an appraisal even when the insurer was only sued under a breach-of-contract theory); *Waterford Condo. Ass'n of Collier Cty., Inc. v. Empire Indem. Ins. Co.*, No. 2:19-cv-81-FtM-38NPM, 2019 WL 4861196, at *1 (M.D. Fla. Oct. 2, 2019) (denying a motion for reconsideration of an order granting a motion to compel appraisal); *Citrus Contracting LLC v. Philadelphia Indem. Ins. Co.*, No. 6:19-cv-1161-Orl-31LRH, 2019 WL 5191417, at *2 (M.D. Fla. Sept. 30, 2019), *report and recommendation adopted*, 2019 WL 5190925 (M.D. Fla. Oct. 15, 2019) (ordering the parties to engage in an appraisal because the parties disputed the amount of loss); *J.P.F.D. Inv. Corp. v. United Specialty Ins. Co.*, No. 6:17-cv-1415-Orl-40GJK, 2017 WL 4685254, at *3 (M.D. Fla. Sept. 29, 2017), *report and recommendation adopted*, 2017 WL 4657721 (M.D. Fla. Oct. 17, 2017) (ordering the parties to engage in an appraisal as provided for in the relevant insurance contract).

### B.   Whether Appraisal Can Be Compelled Absent any Motion for Summary Judgment.

As to Defendant's second argument, that appraisal cannot be compelled before a final determination is made as to whether Defendant breached the Policy's appraisal provision, (*see* Doc. 47 at 10-11), again, the Undersigned is not persuaded.

As stated above, "[u]nder Florida law, a dispute regarding a policy's coverage for a loss is exclusively a judicial question." *Gonzalez*, 2015 WL 12852303, at *4 (citations omitted). "However, when an insurer acknowledges that there is a covered

loss, any dispute regarding the amount of such loss is appropriate for appraisal." *Evanston*, 2018 WL 3526672, at *3 (citations omitted); *see also Johnson*, 828 So. 2d at 1025; *Romay*, 744 So. 2d at 469.

Here, appraisal is the appropriate means of alternative dispute resolution because it was agreed to by the parties in the Policy.  (*See* Doc. 41 at 2-3, 9-10; *see also* Docs. 41-1 at 33-34, 37-38; 47-1 at 28-30).  Moreover, this Court has found that a "motion for summary judgment is not the proper vehicle to address appraisal." *Creekside*, 2021 WL 2003007, at *1 (denying a plaintiff's motion for summary judgment and, instead, requiring the plaintiff to file a separate motion to compel appraisal).  Specifically, the Court has explained that "[u]nlike a summary judgment motion, a determination of whether appraisal is appropriate does not determine whether there is a genuine disputed material fact or whether the moving party is entitled to judgment."  *CMR Constr. & Roofing, LLC v. Empire Indem. Ins. Co.*, No. 2:18-cv-779-FtM-99UAM, 2019 WL 2281678, at *3 (M.D. Fla. May 29, 2019) (rejecting an insurer's argument that a motion to compel appraisal constituted an improper motion for summary judgment); *see also Waterford*, 2019 WL 3852731, at *2 (same).

Moreover, as thoroughly addressed above, "parties can seek appraisal through breach of contract and declaratory judgment actions" as a form of alternative dispute resolution, rather than only as a form of specific performance.  (*See* Doc. 23 at 3 (citations omitted)).  Thus, to the extent that Defendant attempts to argue that

appraisal can only be compelled after an adjudication of the allegation that Defendant breached the Policy, the Undersigned is not persuaded.

Accordingly, the Undersigned finds that Plaintiff's motion is procedurally proper and appraisal can be compelled even without a motion for summary judgment. *See Johnson*, 828 So. 2d at 1025; *Romay*, 744 So. 2d at 469.

### C.   Whether Appraisal Should Be Compelled on the Two Buildings for Which Defendant Denied Coverage.

Third, Defendant contends that it "*wholly* failed to accept coverage for two of the five buildings[, (the "Additional Buildings"),] that [Plaintiff] comprises, since they suffered *no* damages," (Doc. 47 at 11-12 (emphasis in original) (citing Doc. 47-1 at 4)), and thus, appraisal as to the Additional Buildings would be inappropriate, (*see id.* at 11-12 (citing *Pernas*, 2016 WL 471949, at *1; *B.T. of Sunrise Condo. Ass'n, Inc.*, 46 So. 3d 1039)).  In support of its denial of coverage, Defendant cites to its first exhibit, the Declaration of Scott Klaben, which repeats the allegations presented in the motion and, in turn, cites Defendant's May 21, 2019 letter.  (*See* Docs. 47 at 12 n.15; 47-1 at 4, 21-22).  Defendant's May 21, 2019 letter states, "[o]ur investigation of your client's claim found that two of the five buildings did not incur any hurricane-related damage per our investigation and our Expert's report to date. . . .  Therefore, we are denying coverage as a whole for any damage claim to these buildings."  (Doc. 47-1 at 22).  Notably, Plaintiff has not addressed Defendant's assertion beyond broadly requesting that Defendant be compelled to "submit to an appraisal of the loss so the total 'amount of loss' can be determined."  (*See* Doc. 41 at 11).

20

"The appraisers determine the amount of the loss, which includes calculating the cost of repair or replacement of property damaged, and ascertaining how much of the damage was caused by a covered peril as opposed to things such as normal wear and tear, dry rot, or various other designated, excluded causes." *Merrick Pres. Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*, 315 So. 3d 45, 49 (Fla. 4th DCA 2021) (citations and quotations omitted). "Conversely, the court decides whether the policy provides coverage for the peril." *Id.* (citations omitted). Moreover, "causation is [i] a coverage question for the court when an insurer wholly denies that there is a covered loss and [ii] an amount-of-loss question for the appraisal panel when an insurer admits that there is covered loss, the amount of which is disputed." *Id.* (citations and quotations omitted).

Thus, the Court must then determine whether Defendant "wholly denied" coverage for the Additional Buildings. *See Merrick*, 315 So. 3d at 49-50. Plaintiff claimed that it sustained a covered loss and that "[Defendant] acknowledge[d] Plaintiff's loss is covered under the subject Policy." (*See* Doc. 41 at 2, 9). Defendant does not appear to dispute coverage under the policy for three of the five covered buildings. (*See* Docs. 47; 47-1). Based on that, the Undersigned finds that Defendant has not "wholly denied" coverage on Plaintiff's claim. *Merrick*, 315 So. 3d at 45-50 (finding that the insurer had not wholly denied coverage even when it alleged that four out of twenty-one buildings had not been damaged).

In reaching this conclusion, the Undersigned finds Defendant's reliance on *Pernas v. Scottsdale Ins. Co.*, No. 1:15-cv-21506-KMM, 2016 WL 471949, at *1 (S.D.

Fla. Feb. 8, 2016) unpersuasive because that case is distinguishable.  (*See* Doc. 47 at

12 (citing *Pernas*, 2016 WL 471949, at *1)).  In *Pernas*, the court reasoned that

because both buildings under an insurance policy were "listed on separate

declarations pages," each building required "[a]n independent coverage

determination," which could not be made because, *inter alia*, the insured had failed to

comply with its post-loss obligations under the policy as to one of the buildings.

*Pernas*, 2016 WL 471949, at *3.  Here, Defendant has not alleged that Plaintiff

violated its post-loss obligations as they relate to the Additional Buildings.  (*See*

Docs. 47; 47-1).

     Moreover, the court in *Pernas* did not have the benefit of the more recent

decision in *Merrick Pres. Condo. Ass'n, Inc. v. Cypress Prop. & Cas. Ins. Co.*, 315 So. 3d

45, 49 (Fla. 4th DCA 2021).  The facts of *Merrick* more closely align with the facts of

this case.  Specifically, in *Merrick*, an insured sought to compel appraisal of the

damage sustained by twenty-one buildings all covered under the same policy, but

having separate premiums with separate deductibles and coverage provisions.  *Id.* at

47.  The insurer argued that any claims for roof damage were not covered, *id.* at 48,

and that "four residential buildings and the pool," sustained no damage, *id.* at 50.

Nonetheless, the Florida appellate court found that "appraisal is appropriate to

determine the amount of loss to each building, and particularly whether the roof

damages were caused by [covered] or by uncovered causes."  *Id.*  The court reasoned

that "even though each building is covered by what is effectively a separate policy,

[the claim for each building is] subject to appraisal because the insurer did not 'wholly deny' the claims but disputed the cause of damage." *Id.*

The Undersigned finds *Merrick* more persuasive.  Considering *Merrick* and the record in this case, the Undersigned finds that Defendant has not "wholly denied" coverage and, therefore, appraisal is appropriate to determine the amount of loss as to each building, including the Additional Buildings.  *See Merrick*, 315 So. 3d at 49-50.  Even if Defendant alleged that it disclaimed coverage on the Additional Buildings for reasons beyond merely stating that they sustained damage from a non-covered cause, the Undersigned finds that the same result is appropriate because the Court has "discretion over the relative timing of appraisal and coverage determinations," and requiring appraisal as to all of the buildings covered by the Policy will likely "assist the Court when it later determines [any remaining] coverage [issues]."  *See Castillo at Tiburon Condo. Ass'n, Inc. v. Empire Indem. Ins. Co.*, No. 2:20-cv-468-SPC-MRM, 2021 WL 4438370, at *5-6 (M.D. Fla. Sept. 28, 2021) (citation omitted).

**D.    Whether the Court Should Impose Prospective Instructions on the Appraisal Panel.**

For its fourth and fifth arguments, Defendant contends that the Court should: (1) impose prospective instructions on the appraisal panel to ensure that the parties receive due process protections, (*see* Doc. 47 at 12-17 (citations omitted)); and (2) require the appraisal panel to issue its award in a specific form, (*see id.* at 17-18 (citations omitted)).

Defendant specifically requests:

> (1) copy and notice of documents submitted by [Plaintiff] to the appraisal panel; (2) empowering the appraisers to seek and obtain from the parties all documentary evidence needed and with a deadline for submissions; (3) no ex parte communications between the parties and appraisal panel without copy to the other party; (4) a reasonable itemization of the award segregating the calculation of actual cash value from replacement cost, showing all deductions and depreciation; (5) a calculation of the amount of loss that excludes matching and includes depreciation of labor; and (7) the panel's consideration only of invoices, receipts, and documents showing money actually spent on repairs, not estimated amounts, in calculating replacement cost.

(*Id.* at 16-17 (citation omitted)).  Defendant also requests that "any award should be broken down, stating separately the value or amount of loss," because the case is complex and would involve an appraisal of multiple buildings and any award should not include the calculation of "actual cash value, since [Plaintiff] has never presented such a claim and no dispute exists regarding it."  (*Id.* at 17-18 (citations omitted)).  To that end, Defendant asserts that the appraisal panel should only calculate the award "through receipts and invoices of money actually spent, not estimates."  (*Id.* at 18 (emphasis omitted)).  Plaintiff has not specifically responded to any of Defendant's requests.  (*See* Doc. 41).

"Courts may not 'rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties.'"  *Intervest Const. of Jax, Inc. v. Gen. Fid. Ins. Co.*, 133 So. 3d 494, 497 (Fla. 2014) (citation omitted).

Crucially, Defendant does not cite the Policy's language in requesting that the

Court impose appraisal guidelines and require specific processes and award forms.

(*See* Doc. 47).   In fact, the Policy's appraisal provision states only that:

> In th[e] event [of an appraisal], each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a judge of a court having jurisdiction.  The appraisers will state separately the value of the property and amount of loss.  If they fail to agree, they will submit their differences to the umpire.   A decision agreed to by any two will be binding.

(Doc. 41-1 at 33).  The above language does not require that the Court (1) impose

specific guidelines on the appraisal panel, (2) mandate a specific appraisal process, or

(3) compel a specific form for the appraisal award.  (*See id.*).

The Undersigned finds that the Court should not impose guidelines or require

specific processes during appraisal as that would amount to rewriting the parties'

Policy to add conditions for the appraisal process that were not part of the parties'

bargain.  *See Coral Reef Metro, LLC v. Scottsdale Ins. Co.*, No. 2:18-cv-460-FtM-38CM,

2019 WL 721286, at *3 (M.D. Fla. Jan. 30, 2019), *report and recommendation adopted*,

2019 WL 700114 (M.D. Fla. Feb. 20, 2019) ("[T]he Court recommends enforcing

the appraisal provision as it is written rather than fashioning requirements to which

the parties did not agree."); *Waterford*, 2019 WL 3852731, at *3 ("[W]hile the Court

agrees . . . that a line-item breakdown might help decide coverage disputes, it will not

rewrite the policy to require one.").  Additionally, to the extent that Defendant

asserts that an appraisal award should only be limited to determining replacement,

this Court has already found that argument ineffective as a basis to deny appraisal. *CMR Constr. & Roofing, LLC*, 2019 WL 2281678, at *4.

Even so, the Undersigned also finds that a lump-sum appraisal award presenting a single figure for a policy covering multiple buildings would not be appropriate in this case. *See Intervest*, 133 So. 3d at 497-98 ("[I]n construing insurance policies, courts should read each policy as a whole, endeavoring to give every provision its full meaning and operative effect." (citations and quotations omitted)); *see also Baldwin Realty Grp. Inc.*, 2018 WL 4381206, at *6.

The Undersigned finds that the Policy as a whole supports the argument that any appraisal award should delineate between the specific coverages and distinct buildings found within the Policy. Furthermore, as stated previously, Plaintiff has not opposed Defendant's requests. (*See* Doc. 41); *Evanston*, 2018 WL 3526672, at *5 ("The Court agrees that [a detailed line-item appraisal] could streamline coverage issues and seeing no objection from [the insured], the Court approves the use of a line-item appraisal."); *McPhillips v. Scottsdale Ins. Co.*, No. 2:18-cv-421-FtM-99CM, 2018 WL 3805865, at *3 (M.D. Fla. Aug. 10, 2018) (same). Thus, the Undersigned finds it appropriate to require the appraisal panel to issue an award that delineates between the specific coverages offered under the Policy for each unique building. *See Evanston*, 2018 WL 3526672, at *5; *Baldwin Realty Grp. Inc.*, 2018 WL 4381206, at *6; *Intervest*, 133 So. 3d at 497-98. Notably, any future coverage determinations relating to the Additional Buildings that Defendant claims were not damaged, (*see* Doc. 47 at

11-12), may be more efficiently implemented to the final determination if the appraisal panel issues an award taking this form.

      **E.**    **Whether the Underlying Proceedings Should Be Stayed Pending Completion of the Appraisal.**

Lastly, Defendant contends that "[e]ven assuming [Plaintiff] has shown entitlement to appraisal, discovery should proceed unabated on a dual track [because t]o halt discovery now would interfere with [Defendant's] ability to fully investigate any potential inflation of prices or estimates." (*Id.* at 18-19).  In contrast, Plaintiff seeks to have this litigation stayed pending the completion of appraisal.  (*See* Doc. 41).

Upon a review of the allegations underlying this dispute, the Undersigned finds that a stay of these proceedings is appropriate as the completion of the appraisal may resolve a majority, if not all, of the parties' dispute.  *See Waterford*, 2019 WL 3852731, at *3 ("[A] stay would preserve judicial resources because appraisal might resolve the parties' dispute.").

**V.**    **CONCLUSION**

Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.    Plaintiff's Motion to Compel Appraisal and Stay Proceedings Pending Completion of Appraisal and Incorporated Memorandum of Law (Doc. 41) be **GRANTED**;

2.    This action be **STAYED** pending completion of the appraisal process and the Clerk of Court directed to add a stay flag to this case;

3.      The parties be directed to jointly notify the Court of the names of (a) each party's selected appraiser, and (b) the umpire, by a date certain;

4.      The parties be directed to file a joint report on the status of appraisal every ninety days; and

5.      The parties be directed to file a joint notice stating (a) what issues, if any, remain for the Court to resolve, (b) whether the stay needs to be lifted, and (c) how this action should proceed, no later than fourteen days after the conclusion of the appraisal.

**RESPECTFULLY RECOMMENDED** in Fort Myers, Florida on January 26, 2022.

Mac R. McCoy
United States Magistrate Judge

### NOTICE TO PARTIES

A party has fourteen days from the date the party is served a copy of this Report and Recommendation to file written objections to the Report and Recommendation's factual findings and legal conclusions.  28 U.S.C. § 636(b)(1)(C). A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.  *See* 11th Cir. R. 3-1.  A party wishing to

respond to an objection may do so in writing fourteen days from the date the party is served a copy of the objection.  The parties are warned that the Court will not extend these deadlines.  To expedite resolution, the parties may also file a joint notice waiving the fourteen-day objection period.

Copies furnished to:

Counsel of Record
Unrepresented Parties